**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

IN THE MATTER OF THE      :
APPLICATION OF THE UNITED :
STATES OF AMERICA FOR     :     3:19mJ 906 RAR
A SEARCH WARRANT          :

## AFFIDAVIT

I, Michael Breen, a Task Force Officer with the Drug Enforcement Administration, having been duly sworn, state:

1. **INTRODUCTION**

2. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18 of the United States Code. I have been employed as a Police Officer with the Rocky Hill (CT) Police Department since 2012. From December 2016 to the present I have been assigned to the Drug Enforcement Administration ("DEA") Hartford Resident Office ("HRO") as a Task Force Officer ("TFO"). Prior to being assigned to the DEA, I was assigned to a regional narcotics unit (Mid state Narcotics Task Force) from November 2015 until December 2016. As a DEA Task Force Officer, I have participated in numerous investigations concerning violations of federal narcotics and firearms laws. I have coordinated controlled purchases of illegal drugs utilizing confidential sources and cooperating witnesses. I have obtained/participated in the execution of search and arrest warrants pertaining to individuals involved in the distribution of controlled substances, conducted electronic surveillance and physical surveillance of individuals involved in the distribution of controlled substances, analyzed records documenting the purchase

and sale of illegal drugs, spoken with informants and subjects, as well as other local, state and Federal law enforcement officers, regarding the manner in which narcotics traffickers obtain, finance, store manufacture, transport, and distribute illegal drugs. I have received instruction relative to conducting drug investigations while attending in-service training at the Connecticut Police Academy (POSTC) in Meriden, CT. In addition, I also attended a two- week course hosted by the Drug Enforcement Administration in which I received specialized training in the field of narcotics investigations. I also receive periodic in-service training relative to conducting drug investigations.

3. I am currently assigned to the DEA HRO and have been participating in an investigation into the activities of a drug trafficking organization (DTO) that is operating out of Hartford, CT. I am one of the case agents that have directed the investigation that is the subject of this Affidavit. I have participated fully in this investigation and, as a result of this participation, as well as information provided by other law enforcement officers, I am thoroughly familiar with the information contained herein. I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish probable cause to support the issuance of the search warrant.

4. I make this affidavit in support of an application for a search warrant for the cellular telephone contents and records of the cellular telephones (collectively referred to as the "**Devices**" that are identified as follows:

    a. A black Samsung phone ("**Device # 1**") that was seized from 44 Belmont St, Apt 3W, Hartford, CT on July 19, 2018

    b. a black AT&T phone ("**Device # 2**") that was seized from 44 Belmont St, Apt 3W, Hartford, CT on July 19, 2018

    c. a black LG phone (**"Device # 3"**) that was seized from 44 Belmont St, Apt 3W, Hartford, CT on July 19, 2018

    d. a black LG phone (**"Device # 4"**) that was seized from 44 Belmont St, Apt 3W, Hartford, CT on July 19, 2018

    e. a gray superinworld phone (**"Device # 5"**) that was seized from 44 Belmont St, Apt 3W, Hartford, CT on July 19, 2018

5.     The **Devices** have been maintained in DEA custody since they were seized on July 19, 2018 and currently are located at the DEA office located at 716 Brook Street, Rocky Hill, CT. For the reasons set forth herein, I have probable cause to believe and I do believe, that the contents and records of the **Devices** contain evidence, contraband, fruits, or instrumentalities of violations of: 21 U.S.C. § 841 (Unlawful Possession with Intent to Distribute and Distribution of Controlled Substances); and 21 U.S.C. § 846 (Conspiracy and Attempt to Commit Narcotics Trafficking Offenses); and information relevant to criminal forfeiture pursuant to Title 21 USC Section 853 and Title 21 USC Section 841.

6.     The applied-for warrant would authorize the forensic examination of the **Devices**, including accessing all internal applications within the **Devices**, for the purpose of identifying electronically stored data particularly described in Attachment B.

## RELEVANT FACTS

### Background Regarding the Investigation

7.     Since at least August 2017, investigators have been involved in a long-term wiretap investigation into a drug trafficking organization ("DTO") that was distributing large amounts of fentanyl, heroin and other narcotics in the Hartford, CT area. This investigation

revealed that OLIVERAS was a leader of this DTO and that PERDOMO supplied OLIVERAS with heroin and fentanyl.

8.    Between April 2018 and July 2018, investigators intercepted communications over three cellular telephones used by OLIVERAS to discuss, arrange and facilitate narcotics transactions. Intercepted communications, controlled purchases of narcotics, walled-off arrests, narcotics seizures and other evidence revealed, *inter alia*, that:

- OLIVERAS was operating a robust narcotics trafficking business in Hartford, CT. PERDOMO was OLIVERAS's primary source of supply of fentanyl and heroin. OLIVERAS regularly supplied wholesale quantities of fentanyl, heroin, crack and cocaine to multiple drug traffickers in Hartford, CT, who resell the narcotics to their own customers. In addition, OLIVERAS and his associates sold street-level quantities of narcotics to numerous customers on a daily basis.

- OLIVERAS used multiple locations in Hartford, CT to process, store and distribute narcotics, including the following: 5 Gray St, Apt. 3, Hartford, CT ("**Subject Premises #5**"); 44 Belmont St, Apt. FL3W, Hartford, CT ("**Subject Premises #6**"); 90 Catherine St., Apt. B5, Hartford, CT ("**Subject Premises #7**"); and 38 York St, 2nd Floor, Hartford, CT ("**Subject Premises #8**"). In addition, OLIVERAS stored multiple firearms and narcotics-related items within Unit 1024 at the U-Haul Storage facility at 755 Capitol Ave, Hartford, CT ("**Subject Premises #10**").

### OLIVERAS used Cellular Telephones to Facilitate Narcotics Trafficking Activities

9.    Throughout this investigation, investigators intercepted communications on three telephones that were being utilized by OLIVERAS. These three telephones were cell phone with the following call numbers: 860-970-8493; 860-212-0951; and 860-796-5060. Based on

4

intercepted calls, physical surveillance and electronic surveillance, investigators identified PERDOMO as OLIVERAS's primary source of supply of heroin and fentanyl. During the wiretap investigation, OLIVERAS used all three of these telephones to discuss and arrange narcotics-related transactions with PERDOMO and other associates. During these communications, OLIVERAS would arrange to purchase large amounts of narcotics, as well as facilitate the distribution of large quantities of narcotics.

### Seizure of Evidence from OLIVERAS's Stash and Distribution Locations

10. On July 19, 2018, investigators arrested OLIVERAS, PERDOMO and their associates for federal narcotics trafficking offenses. On the same date, investigators executed federal search warrants at multiple locations used by OLIVERAS and his associates to process, package, stash and/or distribute narcotics. From these locations, investigators seized extremely large amounts of narcotics and narcotics-related evidence, including the following:

- **5 Gray St, Apt. 3, Hartford, CT (Subject Premises #5):** investigators seized a shopping bag containing numerous bundles of suspected heroin (gross weight of 246 grams), approximately 52 grams of suspected crack cocaine and approximately 33 grams of suspected marijuana.

- **44 Belmont St, Apt. FL3W, Hartford, CT (Subject Premises #6):**, investigators seized a large amount of U.S. Currency, plastic bags containing unidentified controlled substances in pill form and five cell phones (i.e., **Devices #1-#5**), which include three cell phones used by OLIVERAS that were the subject of wiretap orders.

- **90 Catherine St., Apt. B5, Hartford, CT (Subject Premises #7):** investigators seized a large fentanyl and heroin processing and packaging mill, which included: approximately one kilogram of heroin, 2,713 grams of fentanyl, 500 grams of cocaine base, 100

grams of cocaine, tens of thousands of wax folds containing prepackaged heroin and/or fentanyl; narcotics cutting agents, narcotics processing materials and narcotics packaging materials.

- **38 York St, 2nd Floor, Hartford, CT (Subject Premises #8):** investigators seized approximately 35 grams of crack cocaine; a Smith & Wesson, Model M&P 9 Shield, 9mm caliber pistol, bearing serial number HTF4216; a SIG-SAUER, Model Mosquito, .22 caliber pistol, bearing serial number F346197; 963 rounds of assorted ammunition; four pistol magazines; and a gun holster.

- **U-Haul storage unit (Subject Premises #10):** investigators seized three firearms (two Beretta .25 caliber pistols and a Ruger .357 revolver), 127 rounds of assorted ammunition, a rifle magazine, a pistol magazine, a holster, a kilogram press and methodone pills.

### Arrest of OLIVERAS and Seizure of the Devices

11.  On July 19, 2018 in the early morning hours, investigators arrested OLIVERAS pursuant to a federal arrest warrant. OLIVERAS was located at 44 Belmont Street, Apt 3W, Hartford, CT. Upon entry into the residence, investigators placed OLIVERAS under arrest. Investigators seized five cellular telephones (i.e., **Devices #1 - #5**) which were located inside of the bedroom that OLIVERAS was found sleeping in.

### INFORMATION REGARDING CELLULAR TELEPHONES

12.  Based upon my training and experience, I know that persons who traffic in illegal narcotics often facilitate their criminal activity by the use of cellular telephones. Drug traffickers often store phone numbers of their customers, associates or their sources of illegal narcotics within the electronic memory of their phones, including in contact lists, address lists, recent call lists and electronic calendars. Drug traffickers are constantly on the move throughout the day and by keeping their cell phones on their person, they can stay in frequent communication with

their drug trafficking associates so as to keep track of their associates' whereabouts if a drug transaction has been planned and is imminent. When expecting a supply of narcotics, traffickers will use cell phones to stay in communication with their source of supply to facilitate the drug transaction. Likewise, when expecting to sell narcotics to a customer, traffickers will use cell phones to stay in communication with their customers. I have had occasion to make many arrests of drug traffickers and it is very common that cell phones are seized from the target's person at the time of arrest. It is the ready mobility of cell phones that result in their frequency as a tool of the drug trade. Here, I believe that the **Devices** will contain evidence of the narcotics trafficking activities of OLIVERAS.

13. Based on my training, experience, I know that the **Devices** have different capabilities that allow some of it to serve as a wireless telephone, digital camera and video recorder, portable media player, global positioning system (GPS) navigation device, a hand-held radio, and a personal digital assistant (PDA). In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the particular Device, as well as evidence relating to co-conspirators with whom the Device was in contact.

14. With regards to the **Devices**, I request permission to enter and search the **Devices** for evidence relating to the unlawful distribution and possession with intent to distribute narcotics and the unlawful possession and use of firearms, including evidence of communications between OLIVERAS and other co-conspirators involved in unlawful narcotics trafficking and firearms activities. Furthermore, based on my training and experience, I know that internet browsing history in wireless phones can contain evidence of email communications between co-conspirators who distribute narcotics, or conspire to do so. Also based on my

training and experience, I know that internet browsing history in wireless phones can contain evidence of internet searches for locations and addresses of businesses associated with the unlawful distribution of narcotics such as the businesses and locations used for distributing contraband, renting or leasing vehicles to transport narcotics, and storing illegal narcotics such as commercial storage facilities or other stash locations. Also based on my training and experience, wireless phones may contain videos and images of coconspirators, possible locations to ship, receive, or store narcotics, the quantity of narcotics and/or shipping packages within which the narcotics are concealed, and firearms, as firearms are generally considered tools of the trade in narcotics activity. Specifically, based on my training and experience, I know the following information tends to exist on wireless telephones, including phones used by those involved in the distribution of narcotics:

a. the telephone number, ESN number, serial number, and SIM card number of said telephone;

b. the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of said device;

c. descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, the above-described crimes;

d. any and all records, however created or stored, which tend to demonstrate ownership and use of the phone, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the phone;

e. any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the phone, such as passwords, sign-on codes, and program design;

f. GPS coordinates, waypoints, destinations, location data, addresses, and location search parameters associated with GPS navigation software;

g. saved searches, locations, and route history in the memory of said devices;

h. internet browsing history, to include, internet searches in the memory of said device; and

        i. Images and videos in the memory of said device.

15. It is also requested that the Court authorize the retrieval of the above-described stored electronic information by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device. I am aware that in some cases the software or equipment necessary to analyze wireless telephones in this manner is not readily available to law enforcement during the course of the execution of a search and/or arrest warrant. Further, turning on wireless phones in a non-laboratory setting, where there is no "jammer" active or radio shielding devices, permits additional signals to be received by the phone and thereby alters the data present in the phone at the time of seizure. Therefore it is often necessary to remove a seized phone to a laboratory in order to preserve the data therein from being corrupted.

16. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

17. Because this warrant seeks only permission to examine Devices that are already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

18. The warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

19. As described above and in Attachment B, this application seeks permission to search and seize things that the **Devices** might contain, in whatever form they are stored. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Even when a user deletes information from a device, it can sometimes be recovered with forensics tools. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

20. Searching for the evidence described in Attachment B may require a range of data analysis techniques. In some cases, agents and computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in Attachment B, or perusing all stored information briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, the DEA intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment B.

## CONCLUSION

21. I submit that this affidavit supports probable cause for a warrant to search the **Devices**, which are described in Attachment A, and seize the items described in Attachment B as

evidence, fruits, and instrumentalities of the crimes of the unlawful distribution of narcotics and conspiracy to distribute narcotics, in violation of Title 21, United States Code, Sections 841 and 846, and information relevant to criminal forfeiture pursuant to Title 21 USC Section 853 and Title 21 USC Section 841

Respectfully submitted,

Michael Breen
Task Force Officer
DEA

Subscribed and sworn to before me
on June 5, 2019:
/s/ Robert A. Richardson

HON. ROBERT A. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The cellular telephones to be searched are described as follows:

a. A black Samsung phone (**"Device # 1"**) that was seized from 44 Belmont St, Apt 3W, Hartford, CT on July 19, 2018

b. a black AT&T phone (**"Device # 2"**) that was seized from 44 Belmont St, Apt 3W, Hartford, CT on July 19, 2018

c. a black LG phone (**"Device # 3"**) that was seized from 44 Belmont St, Apt 3W, Hartford, CT on July 19, 2018

d. a black LG phone (**"Device # 4"**) that was seized from 44 Belmont St, Apt 3W, Hartford, CT on July 19, 2018

e. a gray superinworld phone (**"Device # 5"**) that was seized from 44 Belmont St, Apt 3W, Hartford, CT on July 19, 2018

This warrant authorizes the forensic examination of **Devices #1-#5** (the "**Devices**"), including accessing all internal applications within the Devices, for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B
(ITEMS TO BE SEIZED)

With respect to the **Devices**, the items to be seized are as follows:

1. All records on the **Devices**, which presently are in the custody of the DEA, relating to violations of 21 U.S.C. §§ 841(a)(1) and 846, and information relevant to criminal forfeiture pursuant to Title 21 USC Section 853 and Title 21 USC Section 841, including but not limited to the following:

   a. the telephone number, ESN number, serial number, and SIM card number of said device;

   b. the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information and images stored in the memory of said device, which may include the following;

   (1) lists of customers, sources and/or co-conspirators, and related identifying information, such as photographs and entries regarding their phone numbers, nicknames, addresses, and locations;

   (2) types, amounts and prices of narcotics involved in transactions, as well as dates, places, photos and amounts of specific transactions and/or attempted transactions;

   (3) communications, including call log activities, instant messaging activities and/or or text messages, exchanged in the furtherance of or related to drug trafficking activity;

   (4) information regarding members of OLIVERAS's DTO and/or his associates' schedules or travel;

   (5) bank records, checks, credit card bills, account information and other financial records relating to the OLIVERAS DTO, unexplained wealth and narcotics trafficking activities; and

   (6) photographs, video recordings and other formats utilized to capture digital images relating to drug trafficking activity.